UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                **REPORT AND**
                                                **RECOMMENDATION**

                -against-                        24-CR-489 (JMA)(AYS)

KEN PETERMAN,
                         Defendant.
-------------------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

Defendant Ken Peterman ("Peterman" or the "Defendant") a former officer and director of Comtech Telecommunications Corp. ("Comtech" or the "Company") is charged in an indictment dated December 3, 2024 (the "Indictment") with Insider Trading, Securities Fraud and Wire Fraud in violation of Rule 10b-5 of the Rules and Regulations of the Securities and Exchange Commission (the "SEC"), 17 C.F.R. §240.10b-5 (Insider Trading); 15 U.S.C. §§78j(b) and 78ff (Securities Fraud), and 18 U.S.C. §§ 1843, 1349, 2 and 3551 (Wire Fraud) et seq. See generally Indictment appearing as Docket Entry herein ("DE") [1].

The charges in the Indictment arise out of Peterman's conduct with respect to trades in shares of Comtech that took place on or about March 12, 2024 and March 13, 2024. Peterman is alleged to have acted on the basis of material non-public information ("MNPI") acquired as a result of his position with the Company. By improperly acting on the basis of this MNPI Peterman is alleged to have received net proceeds in excess of $40,000 and to have avoided thousands of dollars in market losses. DE [1].

Presently before the Court is the motion of the Securities and Exchange Commission (the "SEC") to quash a subpoena served on it by Defendant. That motion was referred to this Court for Report and Recommendation on February 11, 2026, by the Honorable Joan M. Azrack. Full

1

briefing was completed on March 6, 2026. Upon review of such briefing, and for the reasons set forth below, this Court respectfully recommends that the motion to quash be granted.[1]

BACKGROUND

I.      The Indictment: Facts Alleged

        A.      Peterman's Employment at Comtech Prior to March 12, 2024

The Indictment outlines Peterman's association with Comtech, a publicly traded company with its headquarters in this District. On or about May 10, 2022 Peterman was appointed to Comtech's Board of Directors. In July of 2022 he was named Chairman of the Board. In August of that year Peterman was appointed as Comtech's Chief Executive Officer ("CEO"). Peterman held each of these positions until his termination from Comtech on or about March 12, 2024. DE [1] at ¶ 2.

Between May of 2022 and September of 2023, Peterman acquired approximately 57,641 shares of Comtech's common stock. DE [1] at ¶ 3. Those shares were held in brokerage accounts controlled by Peterman. The Indictment refers to those accounts only as being held by Brokerage Firm 1 and Brokerage Firm 2. By virtue of his positions at Comtech, Peterman is alleged to have acquired MNPI concerning, inter alia, Comtech's performance, financial condition and internal decision-making. Id. ¶ 4. His relationship with Comtech's shareholders is stated to have given rise to a duty not to disclose or trade on the basis of such MNPI while Peterman held the Comtech positions described above. Comtech's investment policy similarly prohibited Peterman from trading in Comtech stock except during specified trading windows. Id.

---

[1] The SEC's motion to quash appears as Docket Entry No. 45 herein. Peterman has filed motions to compel under Docket Entries Nos. 39 and 42. He has also moved to have the Court ignore the SEC's reply brief, as set forth in Docket Entry No. 48. Because the Court recommends granting the SEC's motion to quash, it also recommends that the various Defense motions be denied.

B.      Peterman's 2024 Acquisition of MNPI and Comtech's Investment Policy

Peterman is alleged to have obtained MNPI concerning Comtech's performance and financial condition during the second quarter of its 2024 fiscal year. DE [1] at ¶ 5. As an example, the Indictment refers to Peterman's attendance at a March 4, 2024 confidential presentation by Comtech's Chief Financial Officer ("CFO") concerning the Company's quarter-end earnings, which were to be publicly reported on or about March 18, 2024. During that confidential presentation, Comtech's CFO disclosed that the Company's revenue had dropped over the prior quarter and that its earnings would fall short of analyst estimates. Id. ¶ 5. Whatever that disclosure, Comtech's investment policy prohibited Peterman from trading in Comtech stock until March 20, 2024 - the second business day after the March 18, 2024 date when information as to such quarterly earnings was released to the public. Id.

In addition to information regarding Comtech's quarterly performance, the Indictment describes further MNPI disclosed to Peterman. That MNPI is information regarding Peterman's termination. Thus, the Indictment alleges that on or about March 12, 2024, at approximately 6:39 P.M., Eastern Standard Time ("EST") Peterman was informed that Comtech's Board of Directors had resolved to terminate him for cause as CEO of Comtech and to remove him from its Board of Directors. DE [1] at ¶ 6. Peterman is stated to have known that his termination was related to a potential violation of Comtech's Code of Conduct for engaging in an improper relationship with a subordinate employee. Id. Peterman is also stated to have also known that his removal for cause triggered the filing of Form 8-K with the SEC because his removal was a material event important to shareholders. Id.

Even following his termination, the Indictment alleges that Peterman remained under a duty to neither disclose nor trade on the basis of MNPI acquired by virtue of his former position

3

with Comtech. DE [1] at ¶ 7. Thus, he remained bound by Comtech's investment policy which required that he abstain from trading in Comtech's shares until the second business day after the March 18, 2024 scheduled public release of Comtech's second quarter earnings. Id.

      C.      Peterman's Alleged Trading on MNPI

Despite Peterman's continuing obligation to refrain from trading on the basis of MNPI, it is alleged that shortly after learning of his termination on March 12, 2024, and at a time after the March 4, 2024 confidential meeting regarding Comtech's 2024 Quarterly performance information, Peterman executed, and attempted to execute, one or more trades in Comtech's stock. DE [1] at ¶ 8. Those trades are stated to have taken place directly after Peterman learned of his termination on March 12, 2024, and prior to the scheduled public release of Comtech's quarterly financial information on March 18, 2024. Id. Thus, such trades also took place prior to the opening of the insider trading window with respect to the release of quarterly financial information which, according to Comtech's investment policy, did not open until March 20, 2024. Id. ¶ 11.

Thus, on March 12, 2024, beginning at approximately 7:33 P.M EST (roughly one hour after Peterman was advised of his termination) Peterman is stated to have "repeatedly accessed" his online account with Brokerage Firm 1, and unsuccessfully attempted to trade some of all of the 49,400 shares of Comtech that he held in that account. DE [1] at ¶ 8. Later that night, at approximately 9:28 P.M. EST, Peterman sent a text message to his Personal Investment Advisor (an individual known to the Grand Jury), stating, in part: "Call me a [sic] soon as you can. It's fairly urgent." Thereafter, the Indictment continues, beginning at 9:28 P.M. EST, Peterman repeatedly accessed his online account at Brokerage Firm 2. Id. At 9:36 P.M. EST Peterman sent an email to his Personal Investment Advisor stating, in part, "Please sell/liquidate all Comtech

stock (CMTL) at the first opportunity in the morning. Id. This includes all CMTL holdings in [Brokerage Firm 1] and [Brokerage Firm 2] accounts." Id. At approximately 11:20 P.M. EST, Peterman personally placed a sell order for 8,241 shares of Comtech stock that he held in Brokerage Account 2. Id. On March 13, 2024, at or about 9:35 A.M. EST and 10:00 A.M. EST the sale of Comtech shares that Peterman had initiated from his account at Brokerage Account 2 from the evening before was completed. Id. ¶ 9.

D.      Drop in Comtech's Stock Prices Following Public Notice of MNPI

On March 13, 2024, following public disclosure of Peterman's termination, Comtech's stock price dropped approximately 27%. DE [1] at ¶ 10. Thereafter, on March 19, 2024, following public disclosure of Comtech's financial performance during the second quarter of fiscal year 2024, Comtech's stock price dropped approximately 25%. Id. Based upon Peterman's March 12, 2024 sales of Comtech shares held in his Brokerage Account 2, Peterman received net proceeds of approximately $40,454. 54. Id. ¶ 12. Having sold those shares prior to both the public disclosure of his termination and two days after the public disclosure of Comtech's quarter-end earnings, Peterman avoided thousands of dollars in market losses. Id.

II.    Crimes Charged

Based upon the foregoing facts, the Indictment contains three separate charged crimes, as well as a criminal forfeiture allegation. First, Peterman is charged with Insider Trading in violation of 15 U.S.C. §§78j(b); 78FF; 18 U.S.C. §§2 and 3551 et seq.. This Count alleges that on or between March 12 and March 13, 2024, in advance of the public announcement of Peterman's removal for cause as an officer and director of Comtech and in advance of the public announcement of Comtech's financial performance for the second quarter of 2024, Peterman obtained MNPI concerning both of these matters and, based in whole or in part on that

5

information, executed and attempted to execute securities transactions in Comtech. DE [1] at ¶¶ 13-14.

Count Two of the Indictment charges Peterman with Securities Fraud, in violation of 18 U.S.C. §§1348; 1349, 2 and 3551 et seq. This Count states that on or about and between March 12 and 13, 2024 Peterman schemed to defraud Comtech and one or more members of the investing public by obtaining MNPI about Comtech through is position as an officer and director and then converted that information to his own use for the purpose of executing one or more securities transaction in Comtech common stock. DE [1] at ¶¶ 15-16.

Count Three of the Indictment charges Peterman with Wire Fraud, in violation of 18 U.S.C. §§1343, 1349, 2 and 3551 et seq. This Count also relies on Peterman's conduct on or about and in between March 12 and 13, 2024. It relies on the sending of one or more electronic transmissions to Brokerage Firms 1 and 2 for the purpose of executing the trades based upon the MNPI that are referred to and described above. DE [1] at ¶¶ 17-18.

Finally, the Indictment contains a forfeiture allegation giving Peterman notice of the Government's intent to seek forfeiture of any proceedings of the conduct stemming from the charged crimes. DE [1] at ¶¶ 19-20.

II.    Parallel SEC Civil Action

In addition to the present criminal prosecution, there is pending in this District a civil action commenced by the SEC against Peterman (the "SEC Action"). The SEC Action, appearing as Docket No. 24-4875 (JMW) was commenced on December 11, 2024, approximately one week following the filing of the Indictment. It is based on the same factual information set forth in the Indictment. The SEC Action seeks civil penalties against Peterman, including a judgment enjoining him from violating Federal Securities Laws, disgorgement of ill-

6

gotten gains, civil monetary penalties and injunctive relief prohibiting Peterman from serving as an officer or director of any company with certain named classes of federally registered securities. See SEC Action Complaint appearing as Docket Entry 1 therein (the "SEC Complaint").

While the SEC Action is based on the same alleged MNPI and trades based thereon as the present criminal action, the SEC Complaint contains more detailed information regarding Peterman and his position and training at Comtech. Thus, the SEC Complaint makes detailed reference to Comtech's Standards of Business Conduct which bar trading based upon confidential information. See SEC Complaint at ¶¶ 25-34. The SEC Complaint also goes into greater factual detail regarding the reason for Peterman's termination and his efforts to sell shares of Comtech immediately following his termination - and prior to the end of any Company-imposed insider trading window. On January 22, 2025, the SEC Action was stayed pending the outcome of this criminal matter. Order of Wicks, M.J. dated January 22, 2025.

III.     Discovery Provided Under Rule 16 of the Federal Rules of Criminal Procedure

On January 22, 2025 the Government provided discovery to Peterman in accord with Rule 16 of the Federal Rules of Criminal Procedure. See DE [10]. Such discovery necessarily includes materials within the Government's possession, custody or control that are material to Peterman's defense, and those that the Government plans to use at trial. That discovery included a recording of Peterman's post-arrest statement, which are documents stated to be within the scope of Rule 16(a)(1)(E). As to experts, the Government stated that it would advise Peterman in a timely fashion and in accord with Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, and Rules 702, 703 and 705 of the Federal Rules of Evidence, of any trial experts and required related information regarding their opinions. The Rule 16 letter also advised Peterman that it was

not then aware of any exculpatory material, but would comply with its continuing obligation to provide any Brady material. The Government advised that, as a courtesy, it was providing early disclosure of a witness statement constituting material discoverable under 18 U.S.C. §3500 ("3500 Material"), and that it would disclose additional 3500 material as well as impeachment materials pursuant to Giglio v. United States, 405 U.S. 150 (1972). The Government requested reciprocal discovery from Peterman under Rule 16(b) of the Federal Rules of Criminal Procedure, prior statements of defense witnesses pursuant to Rule 26.2, expert discovery and written notice of Peterman's intent, if any, to claim a defense of actual or believed exercise of public authority. DE [10]. The Government provided additional discovery to Peterman on April 22, 2025, and requested reciprocal discovery on that date. DE [23].

IV.    The Subpoena

Peterman has issued several subpoenas pursuant to Rule 17 of the Federal Rules of Criminal Procedure in connection with this case. At issue here is the subpoena issued to the SEC (the "Subpoena"). The Subpoena was sought on November 23, 2025. It seeks six separately stated categories of information (the "Requests"). The Requests are set forth below. While the categories of information sought in the Requests are somewhat varied, Peterman makes clear that each Requests seeks documents relating to the SEC's investigation of Comtech with regard to the trades that form the basis of this criminal case, i.e., Peterman's trades of March 13-14, 2024. They include requests for presentations made to the SEC as well as SEC internal documents.

V.    Proceedings Relating to and Following Issuance of the Subpoena

On August 28, 2025 Defendant filed an ex parte motion seeking issuance of the Subpoena. That request was accompanied by a declaration of counsel purporting to describe the relevance of the materials sought by the Subpoena. DE [28]. On November 5, 2025, the District

8

Court "so ordered" the Subpoena. The Subpoena was served on the SEC on November 4, 2025. The SEC did not move to immediately quash the Subpoena. Instead, it engaged in correspondence with Defense counsel, in which it argued that the documents sought were either non-specific, privileged and/or irrelevant to Peterman's defense. However, certain documents were produced, and the SEC represented that it had no documents with respect to one category of documents. Further inquiries, emails and "meet and confers" between the SEC and defense counsel failed to resolve differences.

On January 30, 2026, Peterman moved to compel compliance with the Subpoena. DE [39]. On February 11, 2026 the District Court referred the motion to compel to this Court for Report and Recommendation. When it became clear that the SEC had neither entered a notice of appearance herein, nor responded to the motion to compel, this Court directed all counsel to appear for a telephone conference to be held on February 27, 2026. See Order dated Feb. 26, 2026. At that conference it was noted that the SEC emailed the Court and all parties its response to the defense motion to compel, which was styled by the SEC as a motion to quash, in a timely fashion in accord with the order of this Court dated February 26, 2026. The SEC was instructed, again, to file all papers emailed on February 26, 2026 on the docket herein. The SEC thereafter filed two identical briefs appearing as Docket Entries 44 and 45 - one filed as a "Memorandum in Opposition" and one filed as a "Motion to Quash." At the February 26 conference this Court granted Defendant until March 6, 2026 to respond to the SEC's papers, at which point this Court would deem the motion to be fully submitted for decision. Nonetheless, on March 13, 2026 the SEC filed a memorandum of law, styled as a Reply in Further Support of its Motion to Quash. DE [48]. Thereafter, on March 16, 2026, Peterman filed a letter asking this Court to disregard the SEC's filing as untimely, and in violation of this Court's briefing schedule. See DE [49]. The

9

Court agrees that the March 13, 2026 filing of the SEC was outside of the briefing schedule established by this Court's order of February 26, 2026. In its discretion, however, the Court declines to direct the striking of the filing, but will proceed to decide the merits of the motion on the facts and law presented, for which it requires no further briefing, discussion or oral argument.

DISCUSSION

I.      Legal Principles

Rule 17 of the Federal Rules of Criminal Procedure allows a defendant to issue subpoenas commanding testimony, Fed. R. Crim. P. 17(a), and/or the production of "books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c). Courts have discretion to quash or modify a Rule 17 subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). In United States v. Nixon, 418 U.S. 683 (1974) the Supreme Court made clear, and other courts have emphasized, that a Rule 17 subpoena may not be used as a vehicle to provide broad discovery in a criminal case. See Nixon, 418 U.S. at 700 (citing Bowman Dairy Co. v. United States, 341 U.S. 214 (1951)); United States v. Barnes, 560 F. App'x 36, 39-40 (2d Cir. 2014); United States v. Menendez, 2024 WL 2801960, * 1 (S.D.N.Y. May 31, 2024); United States v. R.W. Prof. Leasing Servs. Corp., 228 F.R.D. 158 (E.D.N.Y. 2005). Instead, Rule 17 is a vehicle to "expedite" trials by providing a time and place prior to trial for the inspection of documents that may be used at trial. See United States v. Gogic, No. 22-CR-493 (JMA), 2025 WL 2371008, at *2 (E.D.N.Y. Aug. 14, 2025) (Rule 17 subpoena "permits a defendant to 'obtain and inspect *evidentiary* material prior to trial'") (quoting R.W. Prof. Leasing, 228 F.R.D. at 161) (emphasis in original).

In contrast to Rule 17, discovery in criminal cases is governed exclusively by Rule 16 of the Federal Rules of Criminal Procedure. If material requested is not within the bounds of Rule

10

16, it is may not be requested by using Rule 17 as some type of "work around" discovery. United States v. Kwok, No. 23-CR-118-1, 2024 WL 1719364, at *2 (S.D.N.Y. Apr. 22, 2024) (quoting United States v. Maxwell, No. 20-CR-330, 2021 WL 1625392, at *1 (S.D.N.Y. Apr. 27, 2021)) (Rule 17 subpoenas may not be used as to "undermine the discovery procedures set forth in Rule 16"); United States v. Peraire-Bueno, No. 24-CR-293 (JGLC), 2025 WL 2062021, at *14 (S.D.N.Y. July 23, 2025).

An individual or entity receiving a Rule 17 subpoena may resist production by way of a motion to quash. A subpoena can survive a motion to quash only if the party seeking trial evidence can show that: (1) that the information sought is relevant and admissible; (2) that the information is not otherwise procurable by the exercise of due diligence; (3) that the party seeking the information cannot properly prepare for trial without the information, and the failure to obtain the information within the timeframe of the subpoena may unreasonably delay the trial and (4) that the application is made in good faith and not intended as a "fishing expedition". Nixon, 418 U.S. at 700; Barnes, 560 F. App'x 36, 39-40; Gogic, 2025 WL 2371008, at *2; Peraire-Bueno, 2025 WL 2062021, at *14; Menendez, 2024 WL 2801960, * 1; R.W. Prof. Leasing, 228 F.R.D. at 161.

While the mere mention of the terms "any and all" might signify a subpoena that is not sufficiently specific, such terms may be fatal if the subpoena using those terms is a "fishing expedition" that does not otherwise satisfy the requirements of Rule 17. Nixon, 418 U.S. at 700; United States v. Mendinueta-Ibarro, et al., 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013). A mere showing that documents sought by way of subpoena are "potentially relevant" is insufficient to defeat a motion to quash, and may signal that the request is more a fishing expedition, and less a request for particular documents necessary to prepare for trial. See United States v. Marchisio,

344 F.2d 653, 669 (2d Cir. 1965). The proponent of a challenged subpoena must therefore show that the subpoena "reasonably" specifies the information that is sought by the request for "any and all" documents, rather than just a hope that "something useful will turn up." Kwok, 2024 WL 1719364, at *3 (citation omitted).  As to admissibility, documents sought must be currently admissible in evidence, and not a device to seek information that assists a defendant in "gaining understanding or explanation." Peraire-Bueno, 2025 WL 2062021, at *14. With these principles in mind the Court turns to the merits of the present motion to quash the Subpoena.

II.      Disposition of the Motion

Turning to each of the Requests within the Subpoena that remain at issue the Court sets forth each such Request and rules as follows.[2]

Request No. 2:

> All notes, reports and/or memoranda concerning Ken Peterman's trading activity from March 12 and March 13, 2024 created in connection with In re Comtech Telecommunications Corp., NY-10850, including, but not limited to, notes, reports and/or memoranda gathered as a result of meetings with Paul Weiss.

This Request refers to the SEC's investigation of Comtech. It demonstrates Peterman's knowledge of the investigation, and that during the course of that investigation the law firm of Paul Weiss made a presentation to the SEC. In addition to seeking notes of that presentation, this Request seeks all documents created by the SEC concerning Peterman's trading activities.

Even as limited to Peterman's trades of March 12-13, 2024, this Request does not seek particular documents. Instead, it seeks all documents that form the very basis of the SEC Action and this criminal case. As such, it fails Nixon's specificity requirement. Indeed, Peterman's relevance arguments themselves demonstrate the very generalized and non-specific nature of this Request. For example, Peterman argues that SEC documents regarding the Comtech

---

[2] The briefing herein makes clear that the Requests that remain at issue are Requests 2, 3, 5 and 6.

investigation may contain information about the Company's internal trading practices, its controls, training, and the establishment of trading windows allowed for Company insiders. Peterman argues that such materials are "expected to reveal communications, presentation materials, and records regarding the SEC's investigations into Comtech and Mr. Peterman." DE [47] at 8. Such documents, it is argued, are relevant to Peterman's intent. Describing, as Peterman does, a general category of documents and their possible usefulness at trial does not satisfy Nixon's specificity requirement.

Although he makes broad relevance arguments, Peterman has not pointed to any specific document or class of documents that he may not otherwise procure for use at trial. Peterman is undoubtedly aware of Comtech's written policies and procedures in general, as well as particular rules regarding trading windows available to Comtech insiders. Peterman may or may not rely on such policies at trial to show a lack of intent. However, such a broad class of material is not trial evidence otherwise unavailable to Peterman that he needs to present his case at trial. As to the Paul Weiss presentation, such materials fail both the relevance and specificity requirements of Nixon. Simply stated, what that firm may have communicated to the SEC regarding Comtech's policies has no relevance to the insider trading case against Peterman. Historical trading information as to Peterman's shares might be somewhere within the Paul Weiss presentation or other SEC documents. However, there is no reason to believe that such information regarding when and where trades were requested to be made, or were actually made, are not otherwise available to Peterman.

While Peterman's generalized relevance arguments might hold water to require the production of documents in the broad context of civil discovery, they fall short of the showing required to require production of material pursuant to a Rule 17 trial subpoena. They are, instead,

13

an attempt to circumvent the limited discovery allowed under Rule 16. Peterman has not made a narrow request for evidentiary material. He has instead described every document that might be in the possession of the SEC with respect to his trading activities of March 13-14. The motion to quash this Request is granted.[3]

Request No. 3:

> All communications relating to Ken Peterman with Paul Weiss, Sidley Austin LLP, Morgan Stanley Smith Barney LLC, Axxcess Wealth Management, LLC, Charles Schwab & Co., Inc., the Federal Bureau of Investigation, or the Department of Justice.

This request is similar to Request No. 2, but it seeks all communications between the SEC and listed entities (including Paul Weiss) that relate to Peterman. Peterman has issued subpoenas to many of the entities listed in this Request. He may therefore already be in possession of the documents sought in this Request. In any event, this Request fails for lack of specificity for much the same reason that the Court has quashed Request No. 2. Even limiting this Request to communications relating to the trades of March 12-13, 2024 does not save the Request from being non-specific.

Additionally, the Court rejects any argument that Peterman is entitled to SEC communications with the FBI and/or the Department of Justice because the total number of documents provided by the Government pursuant to Rule 16 is somehow suspiciously low for an insider trading prosecution. DE [28] at 6-7. Such an argument is based on the notion that since this is a securities fraud case, there "must be more." Peterman seeks to test the sufficiency of the Government's Rule 16 production by comparing what he has received to what the SEC generated

---

[3] It is unclear whether Peterman seeks to support the Subpoena on the ground that it seeks documents that might shed light on the reason for his termination. Any such argument fails. As stated in the Indictment, it was the fact of Peterman's termination - and not the reason therefore- that would trigger the filing of a Form 8-K which could, in turn, have an adverse impact on Comtech share prices. Additional particularities about Peterman's inappropriate relationship with a colleague fail Nixon's relevance requirement.

in the course of its civil investigation of the Company. This is tantamount to arguing that if allowed the opportunity to rifle through all of the SEC's files regarding the Company, something must be found. This is an improper use of the Subpoena power granted by Rule 17. It also demonstrates a clear failure to meet <u>Nixon's</u> specificity requirement and is, instead, a fishing expedition. The motion to quash this Request is granted.

<u>Request No. 5</u>:

> All expert analyses conducted in connection with *In re* Comtech Telecommunications Corp., NY-10850 relating to Ken Peterman's March 12 and March 13, 2024 trading activity, including, but not limited to, assessments of trading records.

> This Request must be quashed on the grounds that it lacks specificity and relevance.

There is no specific analysis mentioned. Instead, the Request seeks only the vague "expert analysis" of a government agency that is not the agency prosecuting Peterman. Any expert analysis conducted by the SEC, or in its possession, is irrelevant to Peterman's defense. To the extent that the Government is relying on any expert analysis at trial it will make necessary disclosures in due course in accord with Rule 16. The motion to quash this Request is granted.

<u>Request No. 6</u>:

> All documents and records reflecting statements provided by witnesses or potential witnesses in connection with *In re* Comtech Telecommunications Corp., NY10850 or <u>Securities and Exchange Commission v. Ken Peterman</u>, Civil Docket No. 24-8475 (JMW).

> Similar to Request No. 5, Request No. 6 improperly seeks a work around to the orderly exchange of information under Rule 16. That Rule provides for the exchange of a witness information. Not only is this Request non-specific, it fails because statements by witnesses, or "potential" witnesses that were made to the SEC are irrelevant to the present criminal case. Whether or not witnesses chose to speak to the SEC, and what they said are only discoverable in

15

this criminal case in accord with Rule 16. The request for witness or "potential" witness statements is a non-specific request for information that is not relevant. The motion to quash this Request is granted.

CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Defendant's motion to compel, appearing as Docket Entries 39, 42 and 48 herein be denied, and that the SEC's motion to quash, appearing as Docket Entry 45 herein be granted.

OBJECTIONS

A copy of this Report and Recommendation is being sent to all parties by electronic filing.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. Failure to file objections within the specified time may waive the right to appeal both before the district and appellate courts.  See 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59; United States v. Ballares, 317 App.'x 36, 37-38 (2d Cir. 2008).

Dated: Central Islip, New York
April 9, 2026

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge